Cangro v. NYC Dep't of Finance

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2025

(Argued:  October 24, 2025　　　　Decided:  July 24, 2026)

Docket No. 24-3004

_____

EMIL CANGRO,

*Plaintiff-Appellant*,

- v. -

NEW YORK CITY DEPARTMENT OF FINANCE, and THE CITY OF
NEW YORK,

*Defendants-Appellees.*[*]

_____

---

[*]　The Clerk of Court is instructed to amend the official caption to conform
with the above.

Before: LOHIER, *Chief Judge*, KEARSE, and PARK, *Circuit Judges*.

Appeal by plaintiff from a judgment of the United States District Court for the Southern District of New York, Loretta A. Preska, *Judge*, dismissing his action complaining that his employer--defendants New York City and its Department of Finance--discriminated against him because of, *inter alia*, his requesting a reasonable accommodation for his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 to 8-134. The district court granted defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim, finding that it lacked plausible allegations of, *inter alia*, an adverse employment action and plaintiff's ability to perform the essential functions of his job with accommodation. The court denied plaintiff's request to file a Proposed Second Amended Complaint ("PSAC"), ruling that the PSAC would not remedy the defects the court had identified in the Amended Complaint, and that the PSAC's attempts to add an ADA claim of retaliation were insufficient to state such a claim. On appeal, plaintiff contends principally that the court erred in concluding that the PSAC did not adequately state claims for discrimination and retaliation under the ADA and claims for failure to accommodate under the ADA and the NYCHRL.

We conclude that the district court properly rejected Cangro's claims of discrimination and retaliation, but that it erred in ruling that the Amended Complaint and the PSAC failed to state claims on which relief can be granted for failure to accommodate under the ADA and the NYCHRL.

Affirmed in part, vacated and remanded in part.

STEVEN J. HARFENIST, Lake Success, New York (Harfenist, Kraut & Perlstein, Lake Success, New York, on the brief), *for Plaintiff-Appellant*.

JANET L. ZALEON, Assistant Corporation Counsel, New York, New York (Muriel Goode-Trufant, Corporation Counsel of the City of New York, Richard Dearing, Ingrid R. Gustafson, New York, New York, on the brief), *for Defendants-Appellees*.

KEARSE, *Circuit Judge*:

Plaintiff Emil Cangro appeals from a judgment of the United States District Court for the Southern District of New York, Loretta A. Preska, *Judge*, dismissing his action complaining that his employer--defendants New York City ("City") and its Department of Finance ("DOF" or "NYCDOF")--discriminated and retaliated against him because of, *inter alia*, his requests for a reasonable accommodation for his disability, in violation of the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 *et seq.*, and/or the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 to 8-134. The district court granted defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim, finding that it lacked plausible allegations of, *inter alia*, an adverse employment action and Cangro's ability to perform the essential functions of his job with accommodation. The court denied Cangro's request to file a Proposed Second Amended Complaint (or "PSAC"), ruling that the PSAC would not remedy the defects that the court had identified in the Amended Complaint and that the PSAC's allegations attempting to add an ADA claim of retaliation were insufficient to state such a claim. On appeal, Cangro contends principally that the district court erred in concluding that the PSAC did not adequately state (a) claims for discrimination and retaliation under the ADA, and (b) claims for failure to accommodate his disability under the ADA and the NYCHRL. For the reasons that follow, we conclude that the district court properly rejected Cangro's claims of discrimination and retaliation, but that it erred in ruling that the Amended Complaint and the PSAC failed to state claims on which relief can be granted for failure to accommodate under the ADA and the NYCHRL.

# I.  BACKGROUND

This action was commenced by Cangro on November 16, 2023, with the filing of both a complaint and an Amended Complaint (or "FAC").  The Amended Complaint included the following allegations.

A.  *The Amended Complaint*

Cangro, a resident of Staten Island, New York, was a longtime employee of NYCDOF, the City's "revenue service, taxation agency and recorder of deeds." (FAC ¶¶ 1, 7-8.)  He was a "Principal Administrative Associate assigned to the NYCDOF's External Affairs division." (*Id*. ¶ 13.)  Since 2002, Cangro has suffered from multiple respiratory conditions, including coughing, wheezing, chest tightness, asthma, and diminished lung capacity; in or around 2016, he was diagnosed with chronic obstructive pulmonary disease and bronchiectasis. (*See id*. ¶¶ 10-12.)

During the COVID-19 pandemic and continuing to mid-March 2022, DOF permitted Cangro to work remotely from his home.  On March 14, 2022, the City, through its Equal Employment Opportunity Office ("EEO") "issued a new accommodation by which Mr. Cangro was permitted to work remotely three (3) days

per week and in the NYCDOF office at 1 Centre Street [in Manhattan], two (2) days per week." (*Id*. ¶ 15.) Cangro promptly requested that he be allowed to work the two in-office days in the City's Business Center in Staten Island ("Staten Island office" or "SIBC"), both because he had difficulty breathing while commuting from Staten Island to Centre Street on public transportation wearing a mask, "which at the time was required by the MTA" (*id*. ¶ 17) (the "MTA mask mandate"), and because NYCDOF's Centre Street office lacked ventilation and adequate temperature controls, causing him to sit in a warm and dusty room, exacerbating his respiratory issues (*see id*. ¶¶ 16-18).

Cangro's request was denied, and his administrative appeal was unsuccessful. In rejecting that appeal, NYCDOF "stat[ed] in pertinent part '[w]hile reasonable accommodations may be provided to enable you to satisfy the essential functions of your job, your commute to work is separate from your ability to perform your essential duties.'" (*Id*. ¶¶ 21-22.)

In June 2023 (*sic*; *see* Part I.C. below), again citing the ventilation and climate-control issues at 1 Centre Street, and submitting "medical documentation from the World Trade Center health clinic at Bellevue Hospital" including test results showing that Cangro could not walk more than 10 feet without losing his breath and

needing a rescue inhaler, Cangro sought permission to work completely remotely from home due to his medical conditions. (*Id*. ¶¶ 23-26.) When that request was denied, he asked to be allowed to work three days from home and two days in the Staten Island office; but "[f]ollowing this amended submission, Mr. Cangro was berated by" a DOF investigator "and there was no attempt at engaging in cooperative dialogue as required by law." (*Id*. ¶¶ 27-28.)

Cangro's amended request was denied in August, and he was informed that, effective immediately, he would be required to work at DOF's Centre Street office five days a week. (*See id*. ¶¶ 29, 32-33.) Cangro again appealed, and this appeal was partially successful, with a ruling that he was allowed to work from home two days a week. However, the denial of his request to work part of the week at DOF's Staten Island office rather than its Centre Street office was affirmed, with the explanation "that there is no 'reasonable accommodation that can be made as there is no External Affairs office in the Staten Island Business Center and such a transfer would not actually address your inability to walk more than 10 feet as you would still have to walk more than that amount to access the building and the employee cubicles/work area.'" (*Id*. ¶ 36.) The Amended Complaint again stated that NYCDOF did not engage in any interactive process or cooperative dialogue and that it "refused

to consider or discuss Mr. Cangro's request to work from Staten Island." (*Id*. ¶ 37.)

Based on the above factual assertions, the Amended Complaint (filed after Cangro had received a "right to sue" letter from the United States Equal Employment Opportunity Commission ("EEOC")) asserted four causes of action: (1) disparate treatment discrimination, in violation of the ADA, (2) failure to grant a reasonable accommodation, in violation of the ADA, (3) failure to grant a reasonable accommodation, in violation of the NYCHRL, and (4) failure to engage in a cooperative dialogue, in violation of the NYCHRL.

B. *Dismissal of the Amended Complaint for Failure To State a Claim*

Defendants moved under Rule 12(b)(6) for dismissal of the Amended Complaint for failure to state a claim upon which relief can be granted. They argued principally that the ADA disparate treatment claim should be dismissed because the FAC failed to allege that Cangro was subjected to an adverse employment action, and that, even assuming an adequate allegation that there was such an action, the FAC failed to allege that that action was motivated by Cangro's disability or his requests for accommodation.

Defendants also contended that Cangro's ADA and NYCHRL failure-to-

accommodate claims should be dismissed because, while defendants did not grant Cangro the exact accommodation he requested, the Amended Complaint itself showed that they did attempt to accommodate him by granting him, *inter alia*, a hybrid work schedule along with a separate office room, and that that was a reasonable accommodation. Defendants contended that Cangro's NYCHRL claim that they failed to engage in a cooperative dialogue should also be dismissed in light of their numerous interactive exchanges with Cangro about his accommodation requests.

In an Opinion and Order dated August 14, 2024, *see Cangro v. New York City Department of Finance*, No. 23-CV-10097, 2024 WL 3833971 (Aug. 14, 2024) ("*Cangro I*"), the district court concluded that the FAC failed to state any claim on which relief can be granted. In accordance with Rule 12(b)(6) standards governing assessment of the sufficiency of a complaint and the plausibility of the facts alleged to permit "the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the court accepted as true the Amended Complaint's factual allegations and "the reasonable inferences" that could be drawn from them, but did "not . . . 'credit conclusory allegations or legal conclusions couched as factual allegations,'" *Cangro I*, 2024 WL 3833971, at \*2-\*3

(quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

The district court noted that the plausibility "standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Cangro I*, 2024 WL 3833971, at *2 (internal quotation marks omitted); *see Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Evaluating 'whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cangro I*, 2024 WL 3833971, at *2 (quoting *Iqbal*, 556 U.S. at 679).

As to the substantive law governing Cangro's claim of discrimination, the district court noted that

> [t]o state a plausible claim for discrimination under the ADA, a plaintiff must adequately allege that: (1) his or her employer is subject to the ADA; (2) he or she is disabled within the meaning of the ADA or perceived to be disabled by his or her employer; (3) he or she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) he or she suffered an adverse employment action; and (5) the adverse action was imposed *because of* his or her disability.

*Cangro I*, 2024 WL 3833971, at *3 (emphasis added). The district court stated that in order to "qualify as an adverse employment action, the employer's action toward the

plaintiff must be 'materially adverse' with respect to 'the terms and conditions of employment.'" *Id*. (quoting *Caskey v. County of Ontario*, 560 F. App'x 57, 58-59 (2d Cir. 2014)). The court also stated that "[t]his is the same analysis courts apply when faced with a claim for discrimination under Title VII." *Cangro I*, 2024 WL 3833971, at *3 n.3. (*See also* Part I.C.2. below.)

The district court stated that it was not entirely clear from the Amended Complaint

> what adverse employment action Plaintiff alleges as the basis of his discrimination claim. Reading the Amended Complaint in the light most favorable to Plaintiff, he appears to allege that the adverse action Defendants imposed on him was requiring him several times to work in-person either two or three days per week at the 1 Centre Street location after accommodating his remote work between March 2020 and March 2022. (See [F]AC ¶¶ 14-15, 21, 35, 44-48.) He then seems to allege that this materially affected his working conditions by forcing him to work in an unhealthy location, the 1 Centre Street office. (See id. ¶¶ 18, 26.) He also notes his difficulty wearing a mask while commuting to the 1 Centre Street location, which was required at the time he requested that accommodation. (See id. ¶ 17.) Finally, he makes conclusory allegations stating that he suffered "emotional anguish," was "humiliated," and "demeaned," (see [F]AC ¶ 48), but does not allege any facts to support these injuries.

*Cangro I*, 2024 WL 3833971, at *4. The court noted that Cangro "appears to have worked in the 1 Centre Street location five days a week prior to March 2020 and has

been doing so at a part-time rate since March 2022," and the requirement that he return to that location--with no change to his salary, job benefits, and job responsibilities--"constitute[d] nothing more than an inconvenience that does not qualify as a materially adverse employment action." *Id*.

The district court found that, as to Cangro's criticisms of the "conditions of his 1 Centre Street office, all [Cangro] alleges is that it 'lack[s] [] ventilation,' has 'poorly regulated' climate and temperature control, is an 'extremely warm and dusty room,' and lacks windows that he can open." *Id*. (quoting FAC ¶¶ 18, 26.) The court found those alleged conditions, along with the MTA mask mandate applicable to Cangro's commute to that office via public transportation, differed significantly from the circumstances in the main case relied on by Cangro, *Diaz v. Viagran*, No. 16-CV-9106, 2018 WL 4360790 (S.D.N.Y. Aug. 29, 2018). Diaz's prior accommodations had freed her from disability-related respiratory issues for three years; and the unilateral revocation of one of those accommodations "caused Diaz to suffer severe symptoms at work, sending her to the hospital several times, and ultimately forcing her to take medical leave and a reduced salary." *Cangro I*, 2024 WL 3833971, at \*4; *see Diaz v. Viagran*, 2018 WL 4360790, at \*9.

Noting that the FAC did not allege that NYCDOF's March 2022

-12-

requirement that Cangro return to work at the Centre Street location resulted in such events as emergency hospital visits, use of medical leave, or reduction in his salary or benefits, the district court concluded that Cangro had not plausibly alleged that NYCDOF's alteration of his prior--COVID-19-precautionary--accommodation constituted an adverse employment action. *See Cangro I*, 2024 WL 3833971, at \*4-\*5; *id*. at \*3 ("Because . . . Plaintiff has failed to plead sufficient facts creating a plausible inference that he was subject to an adverse employment action, [the court] dismisses Plaintiff's ADA discrimination claim.").

As to Cangro's claims that NYCDOF violated the ADA and the NYCHRL by failing to grant him a reasonable accommodation for his disability, the district court found the FAC defective for failure to allege that his requested accommodation would have permitted him to perform his job's essential functions. The court viewed all of the Amended Complaint's allegations on this element as conclusory:

> The Amended Complaint does not contain any well-pleaded factual allegations that detail what the essential functions of Plaintiff's job are or how he can accomplish them while working completely remotely or on a hybrid schedule in which he works from the SIBC some days of the week. The only allegations Plaintiff makes that touch on this requirement are conclusory and simple recitations of the pleading requirements. First, he alleges he is a "qualified individual with a disability who, with reasonable accommodation, can perform the essential functions of his

employment position." (See [F]AC ¶ 43.) Second, he alleges "[w]ith a reasonable accommodation, [he] could perform the essential function of his job[.]" (See [F]AC ¶ 54.)

*Cangro I*, 2024 WL 3833971, at *6; *see also id*. at *3 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (internal quotation marks omitted)).

In addition, the district court noted that Cangro's repeated assertions that NYCDOF refused to consider his request to work at its Staten Island office, and failed to engage in a cooperative dialogue as required by the NYCHRL, were "render[ed] . . . implausible" by his other allegations that "show Defendants did engage in a cooperative dialogue." *Id*. at *7 (emphasis in original).

The district court accordingly granted defendants' motion to dismiss the Amended Complaint for failure to state a claim under the ADA or the NYCHRL. The court stated that the dismissal was without prejudice, to the extent that Cangro would be allowed to propose a second amended complaint within 30 days. *See id*. at *8.

C. *The Court's Rejection of the Proposed Second Amended Complaint*

Cangro sent his Proposed Second Amended Complaint to the district court in the form of a markup of the FAC, bearing "redlines illustrating edits he made

to the [FAC]," *Cangro v. New York City Department of Finance*, No. 23-CV-10097, 2024 WL 4582369, at *1 (Oct. 25, 2024) ("*Cangro II*"), along with a letter "explain[ing] how" the PSAC "would cure" the defects the court had identified in the FAC (Letter from Cangro's counsel to the district judge dated September 27, 2024, at 1.) The markups principally made the following changes: The PSAC expressly abandoned Cangro's claim that NYCDOF had violated the NYCHRL by failing to engage in a cooperative dialogue; it added allegations meant to cure defects in the three remaining claims asserted in the FAC; it changed the dates of the accommodation-request communications between Cangro and NYCDOF, or between Cangro and the EEO, that FAC ¶¶ 23, 27, 29, 34, and 35 alleged occurred in "2023," to allege that they occurred in 2022; and it introduced a new claim, alleging ADA-prohibited retaliation.

With respect to the discrimination and failure-to-accommodate claims asserted in the FAC, the PSAC added allegations (a) that "due to Mr. Cangro's working conditions in a poorly ventilated dusty room at 1 Centre Street, he suffered asthma[] attacks and shortness of breath while in the office and, on multiple occasions, needed to leave to obtain immediate treatment to regain his ability to breathe" (PSAC ¶¶ 24 and 63); (b) that Cangro could perform the essential functions of his job with his requested accommodation (*see id*. ¶¶ 14 and 18); and (c) that he had

suffered an adverse employment action when, because of his disability or his requests for accommodation, NYCDOF denied him a promotion (*see id*. ¶¶ 48-52). In addition, the PSAC, unlike the FAC, asserted an ADA claim for retaliation, alleging that NYCDOF had threatened an investigation of Cangro and had denied him a promotion in retaliation for his accommodation requests and for his complaining to the EEOC that he was denied a reasonable accommodation.

In *Cangro II*, the district court--treating Cangro's letter as a motion to amend the FAC--denied the motion, concluding that the PSAC's assertions failed to state a plausible claim of retaliation and failed to cure all of the FAC's pleading deficiencies.

### 1. *The Proposed Claim of Retaliation*

The PSAC alleged that, after Cangro complained to the EEOC, NYCDOF retaliated against him (a) by telling him he was being investigated because of his requests for disability accommodations, and (b) by denying him a promotion. The district court found that the PSAC failed to plausibly allege that either action attributed to NYCDOF constituted an action of retaliation for Cangro's complaint to the EEOC or for his earlier accommodation requests.

In claiming that, in retaliation for Cangro's complaining to the EEOC, NYCDOF sought to threaten or intimidate Cangro by saying that he was being investigated, the PSAC alleged as follows:

43. On or about October 18, 2022, Scott Adlerberg, Mr. Cangro's manager, notified him that he was under investigation by the [City's] Department of Investigation ("DOI") because he was seeking accommodations to work from home due to his disability. This occurred just a few days prior to Mr. Cangro's scheduled hearing with the EEOC.

44. There was no legitimate reason for DOI to conduct an investigation. In fact, just a few days later, Mr. Adlerberg advised Mr. Cangro that he was sorry for telling him that he was under an investigation by DOI and it was apparently just a "rumor" that wasn't true.

45. This incident confirmed that the threat of a DOI investigation against Mr. Cangro was done to [*sic*] swiftly and brutally to [*sic*] threaten, intimidate, hinder and coerce Mr. Cangro and retaliate against him for filing a hearing request with the EEOC.

46. Learning about this potential DOI investigation was incredibly distressing to Mr. Cangro, as it would be to any reasonable employee.

(PSAC ¶¶ 43-46.)

The court noted that "[i]n retaliation cases, a plaintiff must plead plausibly that (1) the plaintiff participated in a protected activity; (2) the defendant

-17-

knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action she suffered." *Cangro II*, 2024 WL 4582369, at *4 (internal quotation marks omitted).  It also noted that in a case

> [w]here there is no direct evidence of discriminatory animus, the Court may infer causation indirectly by temporal proximity between the protected act and the retaliation. Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015).  Although the Court of Appeals has not precisely "drawn a bright line for defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," it has held that "five months" is near that outer limit. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) . . . .

*Cangro II*, 2024 WL 4582369, at *4.

The district court found that the PSAC did not plausibly plead a claim for retaliation on the basis of a threatened investigation because it was "undercut" by the factual allegations. *Id*. at *5.  While the PSAC stated that hearing of the potential DOI investigation was distressing to Cangro, and it "assert[ed] this was done as a threat to intimidate him," *id*., the court noted that Cangro

> made no credible allegation to support that claim.  His own admission that the person who informed him of the purported investigation quickly retracted that statement and apologized within days reveals no threat or intimidation.  And the innocuous spreading of a rumor that Plaintiff alleges *does not* constitute *the*

*type of materially adverse employment action necessary to sustain a retaliation claim.* <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).

*Cangro II*, 2024 WL 4582369, at *5 (emphases added).

The PSAC also alleged that NYCDOF had sought to retaliate against Cangro for his accommodation requests by refusing to grant him a promotion he sought.  In this regard, the PSAC alleged as follows:

48. During the wake of the Covid 19 pandemic, Mr. Cangro took a promotional exam and received a score of 100.  He was approximately number 25 in line for a promotion.

49. Despite Mr. Cangro's high score on the promotional exam and exemplary performance, Mr. Adlerberg told him he would not be selected for a promotion on or around July 17, 2024.

50. Mr. Adlerberg explained that there were budget constraints and NYCDOF was unable to grant him a promotion. The difference in pay for the position which Mr. Cangro was seeking was comparable.

51. In fact, numerous other employees from Mr. Cangro's division were promoted and were selected from the same promotional list he was on.

52. Since it's clear that financial resources cannot be the reason for the denial of Mr. Cangro's promotion, it was done to [*sic*] and [*sic*] retaliate against him for filing an accommodation request with the EEO.

(PSAC ¶¶ 48-52.)

Apparently seeing no PSAC factual allegations to show or imply that NYCDOF had denied Cangro a promotion based on his disability or his requests for accommodation, the district court considered whether an inference of discriminatory intent could be reasonably drawn from the timing of the promotion denial, and concluded that it could not:

> Defendants' alleged decision not to promote Plaintiff creates no inference of discriminatory intent because it occurred eleven months after he obtained his right to sue letter from the EEOC and twenty-two months after the NYCDOF rejected his accommodation request for the final time, well beyond the "outer limit" of temporal proximity. Gorzynski, 596 F.3d at 110.

*Cangro II*, 2024 WL 4582369, at *4.

2. *The PSAC's Effect on the FAC's Claim of Disparate Treatment Discrimination*

The district court in *Cangro II* concluded that the allegations in the PSAC did not cure all of the flaws in the FAC's attempt to assert an ADA claim of disability discrimination. It found that the PSAC failed to state a disability discrimination claim premised on disparate treatment because it lacked sufficient factual allegations of discriminatory intent and causation. The court acknowledged in *Cangro II* that in *Cangro I* it had dismissed the discrimination claim for failure to plead plausibly that

-20-

Cangro had suffered a "materially" adverse employment action, *e.g.*, *Cangro I*, 2024 WL 3833971, at *3; and it acknowledged that in so stating, it had observed that this was the same standard used for Title VII claims, *see id*. at *3 & n.3. The court in *Cangro II* noted that the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), had lowered the standard for what can constitute the adverse-employment-action element in a Title VII action by a plaintiff alleging a discriminatory job transfer. *See Cangro II*, 2024 WL 4582369, at *2. *Muldrow* held that such a plaintiff "need not show" that the transfer caused her an employment disadvantage that was "significan[t]"; instead, it is sufficient to show that she suffered "some harm" resulting from an employment action. 601 U.S. at 350.

The district court in *Cangro II* acknowledged that the *Muldrow* standard applied to Cangro's disability discrimination claim, but concluded that the PSAC nonetheless did not rescue Cangro's claim from dismissal. As the court had set out in *Cangro I,* in order "[t]o state a plausible claim for discrimination under the ADA, a plaintiff must adequately allege that," *inter alia*, the adverse action he suffered "was imposed *because of* his . . . disability." *Cangro I*, 2024 WL 3833971, at *3 (emphasis added). Because the PSAC lacked adequate factual allegations from which a factfinder could reasonably infer discriminatory intent and causation, the court in

-21-

*Cangro II* adhered to its dismissal of Cangro's discrimination claim for failure to state a claim. *See Cangro II*, 2024 WL 4582369, at *2 (the PSAC's "proposed changes" attempting to show an adverse employment action "still would not resuscitate [t]his claim").

3. *The Claims of Failure To Accommodate*

The district court also adhered to its *Cangro I* ruling that the FAC's ADA and NYCHRL failure-to-accommodate claims should be dismissed "because Plaintiff did not plausibly allege that his working from home or at the SIBC would permit him to fulfill the essential functions of his job." *Cangro II*, 2024 WL 4582369, at *3. It found that the new allegations in the PSAC did not cure that perceived defect:

> Plaintiff now proposes allegations that his job requires him to "answer[] emails and hard mail correspondence from the public, answer[] telephone inquiries, respond[] to Siebel Service requests, and work[] on special projects for the Division of External Affairs." (PSAC ¶ 14.) He states that Defendant NYCDOF "changed the procedures for responding to hard mail correspondence" during the COVID-19 Pandemic "by allowing employees to handle the correspondence from their homes," after which NYCDOF would reimburse them. (Id. ¶ 15.) He also inserts an allegation that, during the COVID-19 Pandemic, NYCDOF stopped "permit[ting] members of the public" from having "in person meetings with representatives from NYCDOF." (Id. ¶ 16.) *Plaintiff's proposed edits would still fail to allege that he*

*could perform the essential functions of his job if granted his requested accommodations.*

First, taking as true Plaintiff's new allegations that answering "hard mail" is an essential function of his job and that the NYCDOF changed the policy for hard mail so that employees could "handle [such] correspondence from their homes [,]" it still would be insufficient to allege that Plaintiff could perform such a task under the new procedure through the accommodation that he actually requested. (Id. ¶¶ 14-15 (emphasis added).) That is because the only aspect of Plaintiff's most recent accommodation request that Defendants denied and over which he sues is his request to work several days per week from an office in Staten Island. (See id. ¶¶ 32, 40-42.) Plaintiff includes no new allegation that NYCDOF's new purported policy permitting employees to handle "hard mail" from their homes would enable him to perform that task from the SIBC where he requested to work several days per week. Accordingly, he has failed to allege that he could perform the "essential function" of handling hard mail correspondence if NYCDOF granted the specific accommodation that he actually requested.

In addition, Plaintiff fails to specify what handling "Siebel Service requests" entails or how he could accomplish that either from his home or from the SIBC. *The Proposed Second Amended Complaint lacks any detail about how working anywhere other than his office at the NYCDOF would enable him to perform this task.* Similarly, although Plaintiff now proposes to include that his job requires him to "work[] on special projects for the Division of External Affairs[,]" he does not allege with any particularity what those "special projects" entail, including whether they require meeting in-person with his colleagues at the NYCDOF or with employees of other city agencies who do not work in Staten Island. (Id. ¶ 14.) Thus, he again fails to specify how his requested accommodation of working either from home or from the SIBC would permit him

-23-

to perform this function of his job.

*Cangro II*, 2024 WL 4582369, at \*3-\*4 ("homes" emphasized in original, other emphases added).

Having found that the PSAC did not warrant resuscitation of any of Cangro's claims, the district court dismissed the FAC "with prejudice" and directed the Clerk of the Court to terminate the case. *Id*. at \*1.

## II. DISCUSSION

On appeal, Cangro contends that the district court erred in ruling that the FAC did not state ADA claims on which relief can be granted, in concluding that his PSAC did not cure the FAC defects the court had identified in *Cangro I*, and in concluding that his PSAC's allegations of retaliation did not state a claim on which relief can be granted. He contends that the court improperly dismissed his failure-to-accommodate claims under the ADA and the NYCHRL. For the reasons that follow, we find merit only in Cangro's challenge to the dismissal of his claims of failure to accommodate.

A. *The New Claim of Retaliation*

We see no errors in the district court's conclusion that the PSAC lacks sufficient factual allegations to state a plausible claim on which relief can be granted on Cangro's newly advanced claim of retaliation. His challenges to that conclusion do not require extended discussion. We agree, substantially for the reasons stated by the district court that, given the factual allegations in the PSAC, Cangro's assertion about the report of a DOI investigation, made by his manager and shortly thereafter apologetically retracted as merely a rumor, does not constitute an adverse employment action, even after *Muldrow*. *See Cangro II*, 2024 WL 4582369, at *5. We note as well that Cangro's manager had supported Cangro's request for accommodation--including his request that his in-office work for NYCDOF be at the office in Staten Island. (*See* FAC ¶ 20; PSAC ¶¶ 26 and 43.)

We also agree with the district court that the intervals between the 2024 denial of a promotion for Cangro and the two acts of Cangro for which the PSAC asserts NYCDOF was retaliating--*i.e.,* 11 months after his receipt of a right-to-sue letter and more than 22 months after his request for an accommodation--were too long to support any reasonable inference that Cangro was denied a promotion in retaliation for either of his acts. *See Cangro II*, 2024 WL 4582369, at *4.

We note further that the PSAC, for two reasons, seems to belie any factual basis for a reasonable inference that Cangro was denied the promotion he sought because of his disability or his requests for a disability accommodation. First, the PSAC's assertion that it was "clear that financial resources cannot be the reason for the denial of Mr. Cangro's promotion" (PSAC ¶ 52) is entirely unsubstantiated. Indeed, while the PSAC refers to a "difference in pay for the position which Mr. Cangro was seeking," it merely says that that "difference . . . was comparable" (*id*. ¶ 50), without saying comparable to what. Logically, it could not mean comparable to the salaries Cangro and the "other[s]" were already earning, otherwise there would have been no real "difference" (*id*. ¶¶ 50-51). And it is reasonable to infer as a matter of common sense that the "numerous other employees" who were granted the promotion were not seeking jobs that paid them salaries that were lower (*id*. ¶ 51); thus, the PSAC's assertion that "it's clear that financial resources cannot be the reason for the denial of Mr. Cangro's promotion" is unsupported by any fact found in that pleading (*id*. ¶ 52); indeed, the assertion is contrary to the most plausible inferences factually suggested.

Second, while the PSAC suggested that a discriminatory motive could be inferred because, the PSAC alleged, "numerous other employees from [his]

division were promoted . . . from the same promotional list he was on," (*id*. ¶ 51), the mere mention of such numerosity does not, without other allegations, suggest an unlawful motive. Here, for example, the PSAC also stated that Cangro was "approximately number 25" on that list. (*Id*. ¶ 48.) And it did not allege that any of those who were promoted did not rank higher on the list than Cangro.

In sum, we see no error in the district court's conclusion that the PSAC failed to proffer a retaliation claim on which relief can be granted.

B. *The ADA Claim of Disparate Treatment Discrimination*

As described in Part I.C.2. above, the district court in *Cangro II* eschewed its *Cangro I* rationale for dismissing Cangro's ADA claim of discrimination for lack of plausible allegations of a "materially adverse" employment action, in light of the Supreme Court's decision in the *Muldrow* ruling that a plaintiff pursuing a discrimination claim under Title VII need not show that the adverse employment action was "significant." The court concluded in *Cangro II* that Cangro's claim of disability discrimination nonetheless failed because the FAC and the PSAC lacked sufficient allegations of discriminatory intent.

We affirm the dismissal of Cangro's disparate treatment claim because

we conclude that the PSAC fails to plausibly allege an adverse employment action. Cangro contends that his allegations of physical and mental health harm stemming from NYCDOF's denials of his various requests for accommodation satisfy the lower harm threshold set forth in *Muldrow*. But Cangro has not alleged *any* harm with respect to the terms and conditions of his employment. The PSAC refers to "emotional anguish and suffering" and "asthma attacks and shortness of breath" that "on multiple occasions" required Cangro to "leave to obtain immediate treatment." (PSAC ¶ 24.) These do not constitute "injury . . . concern[ing] the terms and conditions of [Cangro's] *employment*." *Muldrow*, 601 U.S. at 358 (emphasis added); *see Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (noting that "disparate treatment" and "failure to make a reasonable accommodation" are distinct theories of discrimination).

C. *The ADA and NYCHRL Claims of Failure To Accommodate*

In contrast, we disagree with the district court's dismissal of Cangro's ADA and NYCHRL failure-to-accommodate claims. The district court found that both the FAC and the PSAC lacked sufficient detail to support the conclusory assertions that Cangro could perform the essential functions of his job with the requested accommodation. Rule 12(b)(6) does not require a plaintiff to plead

-28-

evidence; and the amount of detail suggested by the court was not necessary.

We see in the FAC and the PSAC at least three simple allegations of fact that, taken together, make it plausible that Cangro would be able to perform the essential functions of his job with his requested accommodation. First, it appears to be undisputed that Cangro was able to perform those functions in working from his home from March 2020 to March 2022. Second, even after other employees were required to return to the office, Cangro was permitted "to work from home two (2) days a week," suggesting that he could perform functions of his job without going to the Centre Street office even after pandemic-related policies were lifted. (FAC ¶ 35; PSAC ¶ 40.) Third, the FAC and the PSAC allege that when Cangro requested the accommodation of working some days from his home and some days in NYCDOF's Staten Island office, "Mr. Cangro's request was . . . supported by his manager at NYCDOF." (FAC ¶ 20; PSAC ¶ 26.)

That said, the word "supported" itself, in this context, is somewhat conclusory rather than factually descriptive. But at this early stage in the litigation, drawing all inferences in Cangro's favor, a manifestation of support by Cangro's manager for the requested accommodation supports the assertion that Cangro could, with that accommodation, perform the requirements of his job. Taken together, these

-29-

factual allegations are enough to survive a motion to dismiss.

Accordingly, the district court erred in dismissing Cangro's ADA and NYCHRL claims that he was denied a reasonable accommodation.

D. *Other Matters*

While we remand for consideration of Cangro's denial-of-accommodation claim under the NYCHRL, we note that although the NYCHRL, similarly to the ADA, defines disability discrimination to include failing to provide "a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job," N.Y.C. Admin. Code § 8-107(15)(a), the 2005 amendments to the NYCHRL in some respects afford an employee more rights than the ADA. Thus courts are required to "analyze NYCHRL claims separately and independently from any federal and state law claims," *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); and in this case the impact, if any, of those amendments remains to be explored on remand.

We also note that the district court--in light of the proper scope of a motion to dismiss under Rule 12(b)(6)--did not address defendants' arguments that they offered accommodations to Cangro that in fact were reasonable. Mindful that

"[w]e are a court of review, not of first view," we express no opinion on this issue. *B.B. v. Hochul*, 166 F.4th 259, 280 (2d Cir. 2026) (internal quotation marks omitted).

## CONCLUSION

We have considered all of the parties' contentions on appeal that are properly before us, and have found them to be without merit except to the extent indicated above. We affirm so much of the judgment as (a) dismissed with prejudice the Amended Complaint's claim of ADA discrimination, and (b) denied plaintiff's motion to file a second amended complaint reasserting that claim and asserting a claim of ADA retaliation. To the extent that the judgment dismissed plaintiff's claims that defendants, in violation of the ADA and the NYCHRL, failed to grant plaintiff a reasonable accommodation, the judgment is vacated, and the matter is remanded for further proceedings consistent with this opinion.

No costs.